IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

MARY ARTRIP,

      Plaintiff,

V.                         CIVIL ACTION NO. 3:04-1187

JO ANNE BARNHART,
Commissioner of Social Security,

      Defendant.

**FINDINGS AND RECOMMENDATION**

      In this action, filed under the provisions of 42 U.S.C. §1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying her application for supplemental security income based on disability. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

      Plaintiff protectively filed her application on May 22, 2002, alleging disability as a consequence of asthma, anxiety, depression, a heart murmur, acid reflux, arthritis, dermatitis, hiatal hernia, chronic sinusitis and a compression wound on her breast.  On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review.  Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was forty-five years of age and had obtained an eleventh grade education and GED.  Her past relevant employment experience consisted of work as an in-home medical aide.  In his decision, the administrative law judge determined that plaintiff suffers from "bronchial asthma, right wrist pain and cervical strain," impairments which are severe.   Though concluding that plaintiff was unable to perform her past work,[1]  the administrative law judge found she had the residual functional capacity for a limited range of medium level work.  On the basis of this finding, and relying on Rule 203.25 of the medical-vocational guidelines[2] and the testimony of a vocational expert,  he  found plaintiff not disabled.

From a review of the record, it is apparent that substantial evidence supports the Commissioner's decision.  Plaintiff and her daughter testified that a number of impairments render her disabled.  Among these are migraine headaches, endometriosis and gastroesophageal reflux.  As the administrative law judge noted, the evidence does not establish that these impairments impose any limitation on plaintiff's ability to work.  Despite her testimony that she has about two migraine headaches a week, the medical evidence does not support this assertion.  Further, there is no indication that endometriosis or gastroesophageal reflux have required much in the way of treatment or have resulted in any significant limitations.   The administrative law judge's findings as to the severity of these conditions are thus supported by substantial evidence.

---

[1]  This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[2]  20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 3.

2

The medical reports reflect that plaintiff experienced significant problems due to neurodermatitis beginning in approximately April of 2000.  For close to a year she suffered with an itchy rash on her upper and lower extremities, chest, back and neck, which caused pain and also became infected.  It was reported in April of 2001, however, that a combination of anti-anxiety, anti-itch, antibiotic and allergy medications brought the rash somewhat under control in the sense that further breakouts were prevented, although plaintiff's extremities were described as "severely spotted."  By July 2, 2001, it was observed that most of the skin lesions were dried up and healing except for one on the left breast which had become ulcerated and required hospitalization in August and September to treat the infection and for skin grafting surgery.  As of October 1, 2001, the neurodermatitis seemed to be "almost healed up."  In March of 2002, plaintiff had no new complaints and was described as doing "fairly well, " and in May, the month she filed her application, she also had no complaints.[3]

Subsequent reports mention this condition mainly in the medical history portion.  Dr. W. Roy Stauffer, who performed a physical exam for the Commissioner on September 18, 2002, noted multiple lesions on plaintiff's upper and lower extremities and chest which he concluded were consistent with neurodermatitis.  He observed that none of these were grossly infected at that time and plaintiff told him this condition comes and goes and worsens if her anxiety increases.  It was Dr. Stauffer's opinion that plaintiff's neurodermatitis would not affect her ability work.

---

[3] While plaintiff's application contains an alleged onset date of February 14, 1998, the regulations provide that supplemental security income benefits will not be paid for any month prior to the filing date of the application which, in this case, is May 22, 2002.  See, 20 C.F.R. §416.335.

3

Plaintiff's testimony indicated that this condition was controlled with the "nerve" medication she was prescribed, although she had recently lost her medical card and could not buy her medications, so it was starting to flare-up again.   After considering this evidence, and particularly Dr. Stauufer's opinion, the administrative law judge determined plaintiff's neurodermatitis was not a "severe" impairment.   As noted, it was at its worst during the year prior to the time plaintiff filed her application and has been more successfully treated and apparently fairly well controlled since that time.   The Court concludes that substantial evidence supports the administrative law judge's findings relative to this impairment.

Plaintiff has required some treatment for depression and anxiety, but the administrative law judge characterized it as inconsistent.  She was treated at the Prestera Center from October 1998 through August 1999, and then restarted treatment there in April of 2003, but submitted reports of visits only from April and May, even though the hearing was not until July and the administrative law judge's decision was not entered until April of 2004.[4]

Plaintiff and her daughter both testified that plaintiff was severely limited by depression but that medication definitely helped.  She indicated there would still be days she could do nothing but sit.  She also admitted that medication controlled her anxiety.

The Commissioner sent plaintiff to David E. Frederick, Ph.D., for psychological evaluation on August 27, 2002.  She was described as well-motivated, with good eye contact, a mildly depressed and moderately anxious mood, broad affect, normal concentration, persistence and

---

[4] Plaintiff and her daughter did state at the hearing that plaintiff had lost her medical card about one month prior to the hearing which might explain the absence of subsequent reports as to her mental health treatment.  Her daughter testified, however, that, prior to plaintiff losing the card, she had been in treatment at Prestera for one to two years, which is clearly not consistent with the medical reports submitted.

4

pace and normal immediate and remote memory, although recent memory was considered moderately deficient. I.Q. testing produced scores ranging from average to borderline. WRAT-3 testing reflected eighth grade level reading and spelling abilities and fourth grade math skills. The diagnosis was major depressive disorder, single episode, moderate, generalized anxiety disorder and borderline intellectual functioning. Plaintiff's listing of her daily activities reflected limitations due only to physical problems.

A November 2, 2002, report reflects that plaintiff came to the emergency room at the Fort Gay Family Health Center complaining of nervousness since earlier in the day, when her house had burned and her daughter was involved in a car accident. She also sought refills for her medication. One month later, plaintiff was examined by Douglas Fischer, M.A., a supervised psychologist. She exhibited a depressed mood, restricted affect, fair insight and judgment and intact immediate memory. She scored in the severely depressed and anxious ranges on the Beck Depression Inventory and the Beck Anxiety Inventory. The diagnosis was major depressive disorder, recurrent, severe, without psychotic features and panic disorder without agoraphobia. She was assigned a Global Assessment of Functioning of forty-five, consistent with serious symptoms or serious impairment in social or occupational functioning.[5] This examiner also expressed the opinion plaintiff's symptoms were so severe she could not work.

On April 18, 2003, plaintiff was again seen by Mr. Fischer. I.Q. testing was done during the exam and scores were similar to those obtained in 2002. WRAT-3 scores were significantly higher in reading and spelling as plaintiff had a post high school level reading ability

---

[5] See, Diagnostic and Statistical Manual of Mental Disorders, 4th Ed., American Psychiatric Association, 1994 at 32.

5

and high school spelling ability, with sixth grade math scores.  Mental status exam was significant for observations that plaintiff was somewhat distractable and appeared to have problems with gross and fine motor skills that interfered with her performance I.Q. score, which was significantly lower than the verbal score.  This was also the case with the August 2002 test; however, there was no suggestion by Dr. Frederick of gross or fine motor difficulty as a cause for the difference in scores. The diagnosis and Global Assessment of Functioning by Mr. Fischer were the same as in his earlier report and he again opined plaintiff was unable to work.

The administrative law judge sought an expert medical opinion from Dr. Carla Rodgers, a psychiatrist, on the issue of the nature and severity of plaintiff's mental impairment from February 14, 1998 forward.  Dr. Rodgers responded that major depressive disorder was the only mental impairment and it was not significant enough to meet or equal a listed impairment.  She assessed the resulting work-related limitations as either "more than satisfactory" (good) or "limited but satisfactory" (fair).  She also noted that the Beck Depression and Anxiety Inventories administered and relied upon by Mr. Fischer are subjective and can be embellished.

After considering this evidence, the administrative law judge, relying on the assessment from Dr. Frederick as well as his conclusions that plaintiff responded to medication but has had inconsistent treatment, determined that plaintiff's mental impairments were not "severe." He declined to adopt either  Mr. Fischer's or Dr. Rodgers' opinions, finding that they were poorly supported by objective data or explanation.  Though the evidence on this issue is clearly conflicting, the Court concludes the administrative law judge's finding is supported by substantial evidence.

Plaintiff is prescribed medication for asthma and has a history of treatment for viral symptoms as well as an emergency room evaluation in June 2002 for chest pain and an asthma

attack.  At that time, she reported being on no medication.  Exam revealed clear lungs with good

bilateral expansion.  The diagnosis was hyperventilation syndrome, asthma, anxiety and headache.

As the administrative law judge observed, the treatment notes reflect few complaints of breathing

problems and Dr. Stauffer, who performed the consultative physical exam, noted plaintiff's remark

that she used her inhaler once per day and her nebulizer once per week.  She also smoked up to three

packs per day.  At that time, physical exam did not demonstrate any pulmonary abnormality, and

pulmonary function testing was interpreted as normal.  This examiner concluded plaintiff's asthma

was under good control.  Despite the lack of significant treatment due to this condition, the

administrative law judge nonetheless found it was a "severe" impairment and assessed plaintiff as

needing to avoid dust, fumes, gases and poor ventilation.  These restrictions are clearly supported

by the evidence.

Finally, plaintiff was diagnosed with right wrist carpal tunnel syndrome based on

MRI evidence and evaluation by an orthopedic surgeon.  It was recommended she wear a resting

splint on the wrist at night.  Although plaintiff alleged decreased grip strength, neither the orthopedic

surgeons who examined her nor Dr. Stauffer observed any hand weakness.  Plaintiff also

experienced pain in her neck, shoulders and low back.  Dr. Stauffer noted some tenderness in the

cervical and thoracic areas of the spine with limited neck, shoulder and low back range of motion;

however,  neurologically, she exhibited normal motor strength and gait, ability to heel, toe and

tandem walk and could perform seventy-five percent of a squat.  This examiner diagnosed history

of chronic neck pain with questionable degenerative joint disease or degenerative disc disease and

expressed the opinion plaintiff could lift/carry fifty pounds occasionally, twenty-five frequently;

stand/walk six hours total per day; and, sit six hours per day.  He felt she would have difficulty

lifting and reaching repetitively, especially overhead, and pushing/pulling with the upper extremities, climbing ladders, ropes or scaffolds and stooping and crouching repetitively. When evaluated on March 5, 2003, by Dr. Tao, an orthopedic surgeon, plaintiff displayed "painless" range of motion of the neck, left upper extremity and right shoulder and elbow, with some pain with wrist movement. A state agency medical advisor concluded plaintiff could perform medium level work not requiring concentrated exposure to extreme cold or heat.

The administrative law judge determined, consistent with Dr. Stauffer and the state agency reviewer, that plaintiff was capable of performing work at the medium level of exertion. He took account of her neck, shoulder and back problems, finding her ability to perform this level of work was limited by an inability to climb ladders, ropes and scaffolds or to more than occasionally stoop and crouch. He found she should avoid overhead reaching and could push/pull only occasionally and to the medium level weight limits. He also found plaintiff must avoid dust, fumes, gases and poor ventilation in consideration of her asthma. He supported his opinion by citing to the mild objective findings of Dr. Stauffer and particularly the lack of abnormal breathing, gait, motor strength or grip strength testing. The Court concludes that the evidence provides substantial support for these findings.

While plaintiff complained of significant physical and mental limitations on her activities, the administrative law judge, taking account of the evidence as well as his observations of plaintiff at the hearing, concluded that her testimony was only partially credible. In making this finding, he noted her limited treatment for asthma as well as her continued smoking; her ability to perform household activities and to go shopping despite alleged pain and mental limitations; her inconsistent mental health treatment; and, the absence of medical findings to support plaintiff's

testimony as to severe, ongoing skin problems.  In view of the evidence, and taking account of the administrative law judge's "opportunity to observe the demeanor and to determine the credibility of the claimant," these findings are entitled to "great weight."  Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).  Finally, in response to hypothetical questioning which included plaintiff's age, education, work experience and a reasonably accurate profile of her functional capacity and overall medical condition, a vocational expert testified that there were significant numbers of medium, light and sedentary jobs in the national economy which plaintiff could perform.

Resolution of conflicts in the evidence is within the province of the Commissioner, not the courts, Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964), and if the Commissioner's findings are supported by substantial evidence this Court is bound to uphold the decision.  Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).  In the present case, the evidence, though conflicting, provides substantial support for the Commissioner's findings with respect to plaintiff's impairments and residual functional capacity.  Under such circumstances, the decision of the Commissioner should be affirmed.

## **RECOMMENDATION**

In light of the foregoing, it is **RESPECTFULLY RECOMMENDED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant  be granted and the decision of the Commissioner affirmed.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District

9

Judge, and that, in accordance with the provisions of Rule 72(b), Fed.R.Civ.P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to mail a copy of the same to all counsel of record.


DATED: May 30, 2006


MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE